**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 1:21-cv-03357-RMR

THE BAR METHOD FRANCHISOR LLC,
a Delaware limited liability company,

      Plaintiff,

v.

HENDERHISER LLC,
a Colorado limited liability company, et al.,

      Defendants.

---

**ORDER**

---

      This case presents the issue of whether and to what extent a franchisor can enforce covenants not to compete and not to use its proprietary information when the franchise agreement has come to an end.  Certainly such agreements may inhibit the former franchisee's ability to do business in a certain geographic area or in certain types of businesses, but Colorado courts generally, and this district in particular, have found that such agreements, in appropriate circumstances, are valid and enforceable.  This case is no exception.

      Plaintiff The Bar Method Franchisor LLC ("The Bar Method") has sued and moved the Court for a Temporary Restraining Order and a Preliminary Injunction, ECF No. 2, to stop its former franchisee, Defendant Henderhiser LLC and its owner Defendant Laura Henderson (the "Henderson Defendants") from breaching the surviving terms of their

Franchise Agreement with The Bar Method.  The Bar Method also seeks to enjoin the
operations of Defendant Henderson's new business, Bravence Wellness Collective LLC
("Bravence").  For the reasons stated below, The Bar Method's motion is GRANTED IN
PART, to the extent it requests a preliminary injunction, and is otherwise DENIED AS
MOOT, to the extent it requests a temporary restraining order.

## I.  BACKGROUND

### A.    The Franchise Agreement

For six years, the Henderson Defendants owned and operated an exercise studio
under a Franchise Agreement with The Bar Method Franchising Inc.—a successor to
Plaintiff The Bar Method—in the Cherry Creek neighborhood of Denver, Colorado.  The
studio was located at 311 Steele Street, Suite 200 (the "Steele Street Site") and offered
barre classes pursuant to The Bar Method's proprietary methods.  ECF No. 35 (Stipulated
[Proposed] Findings of Fact) ¶ 1; Pl. Ex. 1[1] (Franchise Agreement) at 1.

The original Franchise Agreement and subsequent renewals granted Defendant
Henderhiser a franchise to own and operate a Bar Method studio in Cherry Creek.  Pl.
Ex. 1 § 1.B.; *Id.* at B-1, A-1.  The term of the Franchise Agreement expired on November
30, 2021.  ECF No. 1-3 at 3 (Amendment to Renewal Franchise Agreement § 4(A)).  As
part of that Franchise Agreement, Defendant Henderhiser agreed to in-term and post-
term covenants of confidentiality and not to compete.  Pl. Ex. 1 §§ 11, 12, 16.  Additionally,

---

[1] The Court admitted a number of exhibits at the evidentiary hearing, to which it cites in this Order in the
format "Pl. Ex. _" or "Def. Ex. _."

Defendant Henderson agreed to be personally bound by the provisions of the Franchise Agreement.  *Id.* at C-1 through C-4.

Under the Franchise Agreement's post-term covenant not to compete, The Henderson Defendants agreed that:

> [N]either [Henderhiser] nor any of [its] Owners . . . will: . . . have any direct or indirect, controlling or non-controlling ownership interest in any Competitive Business which is located or providing services to clients at any location: (a) at the Site; (b) within a five (5)-mile radius of the Site; or (c) within a five (5)-mile radius of any Bar Method Studio then operating or under construction on the effective date of the termination or expiration.

*Id.* § 16.D.  The Henderson Defendants made similar promises under the in-term covenant not to compete, which applied to any Competitive Business, "wherever located or operating."  *Id.* § 12.  "Competitive Business" is defined as follows:

> The term "**Competitive Business**" means any gymnasium, an athletic or fitness center, a health club, an exercise or aerobics studio, or one or more similar facilities or businesses offering barre-based or other fitness-based instruction, or an entity that grants franchises or licenses for any of these types of businesses, other than a Bar Method Studio operated under a franchise agreement with [The Bar Method].

*Id.* § 12 (emphasis in original).

### B.    The Minnesota Litigation, Arbitration, and Settlement Agreement

In September of 2021, The Bar Method learned that Defendant Henderson was advertising a new business called Bravence Wellness Collective, owned and operated by Defendant Henderson and ostensibly located less than two miles away at 660 South Colorado Boulevard in Glendale, Colorado.  For example, on September 16, 2021, Bravence advertised its future opening on Instagram and Facebook, stating "GIVEAWAY – We're turning a bar into barre!"  Pl. Ex. 6.

The Bar Method declared a breach of the Franchise Agreement and made it clear that it intended to enforce its rights under the Franchise Agreement. On September 27, 2021, The Bar Method sent Defendant Henderson a cease and desist letter, demanding that she cease her violation of the Franchise Agreement's covenant not to compete through her ownership interest in Bravence, a business offering not just fitness-based instruction but barre classes, in particular, within five miles of the Steele Street Site. ECF No. 1-9 at 2. On October 12, 2021, The Bar Method filed suit near its headquarters in Minnesota District Court, (the "Minnesota Litigation") and filed a motion for temporary injunction in that case the same day. ECF No. 35 ¶ 9. On October 12, 2019, The Bar Method also filed a Demand for Arbitration with the American Arbitration Association (the "Arbitration"). *Id.* ¶ 10.

On October 17, 2021, in order to avoid litigation and in order to engage in settlement negotiations, the parties executed an Agreement to Stay Temporary Injunction Motion, effective from October 18, 2021 through November 1, 2021. *Id.* ¶ 11; Pl. Ex. 13 at 1, § 2. On November, 10, 2021, Defendant Henderson filed an affidavit in the Minnesota Litigation, in which she swore that "Bravence is at a separate location from [her] former franchised [Bar Method studio] business"; that Bravence was located in Glendale, Colorado; and that "Bravence's operation of a separate, independent business [was] not even competitive with The Bar Method." Pl. Ex. 25 ¶ 4. Upon the expiration of the Franchise Agreement on November 30, 2021, the parties signed a Settlement Agreement on December 2, 2021, with an effective date of December 1, 2021. ECF No. 35 ¶ 12; Pl. Ex. 14. Under the Settlement Agreement, the parties agreed to settle the

Minnesota Litigation and Arbitration and to release each other from all claims arising under or related to the Franchise Agreement and the franchise relationship.  Pl. Ex. 14 §§ 5–6.  The parties agreed to a noncompete clause in the Settlement Agreement that is more limited than the post-term covenant not to compete in the Franchise Agreement.[2] It provides:

> The Henderson Defendants, and each of them individually, agree that, commencing on the date of execution of this Agreement and for a term expiring at 11:59 p.m. on May 31, 2023 (the "Restricted Period"), that they will not, whether as an owner, employee, agent, consultant or otherwise, **engage in any business offering barre classes**, as defined below, within a five (5) mile radius of 311 Steele Street, Suite 200, Denver, Colorado 80206 or within five (5) miles of any other The Bar Method Studio existing as of the date of this Agreement (the "Restricted Territory").

*Id.* § 3 (emphasis added).

The Settlement Agreement defines "barre class" as follows:

> "Barre class" means a workout technique that is taught to focus on specific muscle groups to improve balance, strength and posture.  A barre class predominantly uses the participant's own body weight for resistance and may include a few basic props: free weights, mats, sticky socks, sliders, a ball, or a resistance band.  A barre class focuses on employing low-impact isometric exercises, which are static holds that do not require a range of motion.  The minimal range of motion in a barre class relies on control rather than momentum.

*Id.* § 3(a).

---

[2] Defendants' position is that the Settlement Agreement supersedes the Franchise Agreement, "and the only parts of the Franchise Agreement which still have affect [sic] are those permitted by the Settlement Agreement."  ECF No. 29 at 15.  Indeed, the Settlement Agreement provides that "all continuing obligations under the Renewal Franchise Agreements that provide for their survival notwithstanding the Renewal Franchise Agreement's termination or expiration, including but not limited to the obligations set forth in Sections 11 and 16, shall continue in full force and effect **unless modified herein**."  Pl. Ex. 14 § 2 (emphasis added).

The noncompete clause in the Settlement Agreement narrows the obligations in the post-term covenant not to compete in the Franchise Agreement.  Therefore, the Settlement Agreement's noncompete clause modifies and supersedes the post-term covenant not to compete in the Franchise Agreement.

Contrary to Defendant Henderson's representations in her sworn affidavit before the Minnesota court and other communications, at the time she entered into the Settlement Agreement Defendant Henderson had executed a lease extension to operate Bravence in exactly the same location where she had previously been operating the franchised business, but did not disclose this fact to The Bar Method. Furthermore, Defendants had already communicated with existing Bar Method clients regarding the opening of Bravence and its class offerings.

### C.     The Present Case

The Bar Method alleges that Bravence began offering barre classes on December 1, 2021, one day before the Settlement Agreement was signed, and that Bravence's scheduling website still referred to "barre" offerings as of December 7, 2021. ECF No. 21 ¶¶ 72, 74. The Bar Method also alleges that "[i]n other places on Bravence's website, Henderson and Bravence swap the use of the term 'barre' with 'functional movement,'" such as in its description of its "Signature" class offering. *Id.* ¶ 76. On December 7, 2021, The Bar Method observed one of these "Signature" classes and saw that it "used The Bar Method's proprietary instruction, verbal adjustment cues, and choreography and followed the exact same sequence of a Bar Method® class." *Id.* ¶ 82.

On December 14, 2021, The Bar Method filed its Complaint, ECF No. 1. The parties conducted expedited discovery on the present motion, *see* ECF Nos. 15–18. According to The Bar Method, it was during this discovery that it first learned that Bravence was operating at the Steele Street Site, the exact same location as the former franchised studio. Thus, on December 28, 2021, The Bar Method amended its Complaint

and moved to supplement its briefing regarding the injunctive relief.  ECF Nos. 20, 21.

The Amended Complaint identifies eleven claims for relief: (I) fraud by all Defendants in

inducing The Bar Method to enter into the Settlement Agreement; (II) negligent

misrepresentation against all Defendants; (III) breach of the Franchise Agreement—

specifically, violations of the Covenant of Confidentiality and the Covenant Not to

Compete[3]—against Defendants Henderson and Henderhiser; (IV) breach of the Guaranty

against Henderson; (V) misappropriation of trade secrets in violation of the Defend Trade

Secrets Act ("DTSA"), 18 U.S.C. §§ 1836, et seq., against all Defendants; (VI)

misappropriation of trade secrets in violation of the Colorado Uniform Trade Secrets Act

("CUTSA") against all Defendants; (VII) violation of the Colorado Deceptive Trade

Practices Act against all Defendants; (VIII) tortious interference with contractual relations

against Defendant Bravence; (IX) breach of the Settlement Agreement against all

Defendants (pleaded in the alternative); (X) injunctive relief against all Defendants; and

(XI) a claim for attorneys' fees and costs against all Defendants.  ECF No. 1 ¶¶ 88–158.

On December 30, 2021, the Court granted The Bar Method's request to

supplement, *see* ECF No. 22, and The Bar Method filed the supplemental brief the same

day, ECF No. 23.  On January 4, 2022, Defendants filed their Response to Motion for

---

[3] The heading for Count III of the Complaint identifies it is a claim for violations of the Covenant of Confidentiality and the **In-Term** Covenant Not to Compete; however, the following paragraphs include an allegation that "Henderson is in violation of the **post-term** covenant not to compete in the Franchise Agreement."  ECF No. 21 ¶ 114 (emphasis added).  Therefore, the Court construes this claim as a claim for violations of both the in-term and post-term covenant not to compete.

Preliminary Injunction, ECF No. 29.[4]  The Court held an evidentiary hearing on January 10, 2022, ECF No. 36, and the parties submitted proposed interim orders, ECF Nos. 37, 38, and proposed final orders, ECF Nos. 40–41.  The Motion for a Temporary Restraining Order and a Preliminary Injunction, ECF No. 2, is now ripe for a decision.

## II.    JURISDICTION

The Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1367(a).  The Court exercises federal question jurisdiction over Plaintiff's claim for misappropriation of trade secrets under the DTSA, pursuant to 28 U.S.C. § 1331, and it exercises supplemental jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367(a).

## III.    LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy, the exception rather than the rule."  *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019).  One may be granted "only when the movant's right to relief is clear and unequivocal."  *McDonnell v. City & Cnty. of Denver*, 878 F.3d 1247, 1257 (10th Cir. 2018).  To succeed on a motion for preliminary injunction, the movant must show that: (1) it is "substantially likely to succeed on the merits"; (2) it will "suffer irreparable injury" if the court denies the injunction; (3) its "threatened injury" without the injunction outweighs the opposing party's under the injunction; and (4) the injunction is not "adverse to the public interest."  *Mrs.*

---

[4] In their Response, Defendants "seek an order declaring that the courts of Colorado have exclusive jurisdiction in this matter unless and until the Settlement Agreement is rescinded by a Court of competent jurisdiction."  ECF No. 29 at 2.  However, under Local Rule 7.1(d) for the United States District Court for the District of Colorado, "[a] motion shall not be included in a response or reply to the original motion.  A motion shall be filed as a separate document."  D.C.COLO.LCivR 7.1(d).  Therefore, if Defendants wish to seek this relief from the Court, they must do so in a separate motion.

*Fields*, 941 F.3d at 1232; *accord Winter v. Nat's Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "It is the movant's burden to establish that each of these four factors tips in his or her favor."  *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188–89 (10th Cir. 2003).

Injunctions that would change the status quo[5] are disfavored and require the movant to "make a strong showing" that the likelihood-of-success-on-the-merits and the balance-of-harm factors tilt in its favor.  *Mrs. Fields*, 941 F. 3d at 1232.  The Bar Method seeks injunctive relief to enforce the terms of the Franchise Agreement, which would require a finding of a substantial likelihood that it will succeed on the merits of its claim to rescind the Settlement Agreement, which would change the status quo.[6]  Therefore, The Bar Method must "make a strong showing" on the likelihood-of-success and balance-of-harms factors.  However, "where the moving party has established that the three 'harm' factors tip *decidedly* in its favor, the 'probably of success requirement' is somewhat relaxed."  *Heideman*, 348 F.3d at 1189.

## IV.    ANALYSIS

A former franchisee who wishes to strike out on her own after the expiration of a franchise agreement may come to regret the limitations that her previous agreements, such as obligations to keep the franchisor's proprietary information confidential and not to compete with the former franchisor, may place on her new efforts.  But that does not mean they are not legally enforceable.

---

[5] The status quo is "the last peaceable uncontested status existing between the parties before the dispute developed."  *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 798 n.3 (10th Cir. 2019) (quoting 11A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2948 (3d ed. 2018)).

[6] Seeking the relief of simply enforcing the current terms of the Settlement Agreement, on the other hand, would preserve the status quo.

For the reasons that follow, the Court finds that The Bar Method has demonstrated that it has suffered and will continue to suffer irreparable harm absent injunctive relief; that the balance of the harms tips in its favor; and that granting injunctive relief would not be against the public interest.  In particular, the evidence of irreparable harm is significant. Furthermore, The Bar Method has also demonstrated a substantial likelihood of success on several of its claims, and the Henderson Defendants have likely violated the terms of the Franchise Agreement and the subsequent Settlement Agreement.  At a minimum, this Court finds there is sufficient evidence to grant the preliminary injunction even if The Bar Method is required to meet a higher burden to demonstrate these factors.

### A.    Irreparable Harm

"[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004).  District courts have found irreparable harm in franchise cases involving violation of a covenant not to compete where there is a substantial risk of customer confusion, direct evidence that the franchisee poached customers, and evidence that the franchisee misappropriated trade secrets or proprietary information to benefit her new business.  *Postnet Int'l Franchise Corp. v. Wu*, 521 F. Supp. 3d 1087, 1103 (D. Colo. 2021); *see also Core Progression Franchise LLC v. O'Hare*, No. 21-cv-0643-WJM-NYW, 2021 WL 1222768, at *9 (D. Colo. Apr. 1, 2021) (quoting *Bad Ass Coffee Co. of Hawaii, Inc. v. JH Nterprises, L.L.C.*, 636 F. Supp. 2d 1237, 1249 (D. Utah 2009)) ("The 'majority of courts that have considered the question have concluded that franchising companies suffer irreparable harm when their former

franchisees are allowed to ignore reasonable covenants not to compete.'").  Customer confusion may arise where the franchisee operates in the exact same location and offers substantially the same services, using the franchisor's proprietary information post-termination.  *See Postnet*, 521 F. Supp. 3d at 1103; *see also Bad Ass Coffee*, 636 F. Supp. 2d at 1249 (noting that franchisee was in same location under irreparable harm analysis); *Fitness Together Franchise, L.L.C. v. EM Fitness, L.L.C.*, No. 1:20-cv-02757-DDD-STV, 2020 WL 6119470, at *11 (D. Colo. Oct. 16, 2020) (same).

Here, there is significant, if not undisputed, evidence that during its first month of operation, Bravence was housed in the exact same Steele Street Site where the former franchised Bar Method Studio was located; offered classes using the Bar Method proprietary information; advertised "barre" classes; utilized Bar Method customer lists to communicate with and convert customers; and ultimately, as of the date of the evidentiary hearing, Defendant Henderson estimated she had converted approximately 50 percent of the former Bar Method customers to Bravence, as well as most of the employees of the former franchise.  Tr. at 210:20–211:18; *id.* at 55:8–20; Pl. Ex. 18; Pl. Ex. 70; Pl. Ex. 71 (restricted); ECF No. 21 ¶ 74; Tr. at 197:14–22.  The Bar Method's Brand President Stephanie Schon testified that Defendants' obligations not to solicit The Bar Method's customers was important for preserving The Bar Method's competitive market position and goodwill.  Tr. at 50:20–23, 75:23–76:4.

Furthermore, "the irreparable harm findings are based on such factors as the difficulty in calculating damages, the loss of a unique product, and existence of intangible harms such as loss of goodwill or competitive market position."  *Dominion Video*, 356

F.3d at 1264.  Here, The Bar Method has demonstrated the "existence of intangible harms such as loss of goodwill or competitive market position," and thereby, "difficulty in calculating damages."  *See id.*  The Bar Method likely has been, and will continue to be, irreparably harmed, absent the requested relief.

## B.    Substantial Likelihood of Success on the Merits

The Bar Method argues it has a substantial likelihood of success on the merits of five of the counts asserted in the Amended Complaint—Count I, fraud in the inducement and rescission of the Settlement Agreement; Count III, breach of the Franchise Agreement's covenant of confidentiality and covenant not to compete; Count V, misappropriation of trade secrets in violation of the DTSA; Count VI, misappropriation of trade secrets in violation of the CUTSA; and, in the alternative, Count IX, breach of the Settlement Agreement.  ECF No. 2 at 26–42.  The Bar Method has made a strong showing that it is likely to succeed on the merits of these claims.

### 1.    Governing Law

The parties agreed that Colorado law would apply to the Settlement Agreement and that Colorado law would apply to the Franchise Agreement's provisions regarding confidential information and client information (Sections 11.A. and 11.B.), its post-term obligations regarding confidential information, and its post-term covenant not to compete (Sections 16.C and 16.D).  *See* Pl. Ex. 14 § 7(b); Pl. Ex. 1 § 18.G.  Federal courts sitting in diversity apply the choice of law provision of the forum.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Colorado follows the Restatement (Second) of Conflict of Laws.  *See Kipling v. State Farm Mut. Auto. Ins. Co.*, 774 F.3d 1306, 1310

(10th Cir. 2014) (citing *Wood Bros. Homes, Inc. v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (1979)); *In re Frontier Airlines Litig.*, No. 20-cv-01153-PAB-KLM, 2021 WL 4149628, at *4 n.3 (D. Colo. Sept. 13, 2021) (not yet reported).  Under the Restatement, the parties' choice of law governs, unless:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2) (Am. L. Inst. 1971).  Here, there is a reasonable basis for choosing Colorado law because, although Plaintiff is from a different state, it contracted with Colorado residents and brought this action in Colorado.  Further, Colorado law would likely apply under Restatement § 188 because it has the "most significant relationship" to the transaction and the parties.  *Id.* § 188(1).

## 2.   Rescission of the Settlement Agreement

First, The Bar Method argues that it is likely to succeed in gaining rescission of the Settlement Agreement because Defendants fraudulently induced The Bar Method to enter into that agreement to halt The Bar Method's pursuit of the Minnesota Litigation and Arbitration.  ECF No. 2 at 26–30.  For the reasons discussed below, the Court finds that rescission of the Settlement Agreement is likely appropriate under either a fraudulent inducement theory or as a remedy to Defendants' likely breach of the Settlement Agreement.

**a.    Breach of the Settlement Agreement**

Under Colorado law, "[a] party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *W. Dist. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). The parties do not dispute that The Bar Method performed its obligations under the Settlement Agreement because it stopped pursuing the Minnesota Litigation and Arbitration. Also, as discussed above, The Bar Method argues, and the Court finds, that it has been irreparably harmed but that damages are difficult or impossible to calculate. *See supra* Section IV.A.

As stated above, Defendants agreed in the Settlement Agreement's noncompete clause not to "engage in any business offering barre classes" within a five-mile radius of the Steele Street Site or any Bar Method studio. Pl. Ex. 14 § 3 (emphasis added). Defendants argue that covenants not to compete are invalid under Colorado law. ECF No. 29 at 16–19. Under Colorado Revised Statute § 8-2-113(2), "[a]ny covenant not to compete which restricts the right of any person to receive compensation for performance of skilled or unskilled labor for any employer shall be void." Colo. Rev. Stat. § 8-2-113(2). However, that statute goes on to provide that "this subsection (2) shall not apply to: . . . [e]xecutive and management personnel." *Id.* § 8-2-113(2)(d).

Defendant Henderson likely qualifies as "[e]xecutive and management personnel" under the statute as owner and operator of Bravence, Henderhiser, and the former franchised Bar Method studio. *See id.*; *Postnet*, 521 F. Supp. 3d at 1102 (citing Colo.

Rev. Stat. § 8-2-113(2)(d)) (finding that "Mr. Wu likely qualifies as 'executive and management personnel' under the statute as an independent contractor and owner of the franchised business."). Therefore, the exception to Colorado's limitation on covenants not to compete for executive and management personnel likely applies, and the noncompete obligations are valid. While at this stage, the Defendants did not dispute the reasonableness of the covenant, I find that it is likely reasonable and enforceable.[7] Defendants likely breached their valid noncompete obligations by offering barre classes at Bravence after the Settlement Agreement was executed. It appears that Bravence began substituting the term "barre" with "functional movement" to describe the classes that were offered at Bravence. For example, in a December 16, 2021 email exchange between two Bravence employees, one asked "Can I say barre? I can't remember if that was allowed or not!" The other replied, "We can't use barre. You can say functional movement." Pl. Ex. 69. In fact, Defendant Henderson testified that she specifically advised her staff at Bravence not to use the word "barre" because she wanted to avoid being in litigation. *See* Tr. at 208:13–15. In spite of this semantic nicety, evidence and testimony provided at the evidentiary hearing indicates that Bravence went forward with providing "barre" offerings in practice, if not in name:

---

[7] The terms of the covenant not to compete are also likely reasonable under Colorado law. The Settlement Agreement's noncompete obligations require Defendants to refrain from "engag[ing] in any business offering barre classes, as defined . . . , within a five (5) mile radius of 311 Steele Street, Suite 200, Denver, Colorado 80206." Pl. Ex. 14 § 3. "Numerous appellate decisions [in Colorado courts] have sustained covenants not to compete for terms up to five years and within distances of 100 miles." *Harrison v. Albright*, 577 P.2d 302, 305 (Colo. App. 1977) (also noting that "the burden of proof as to the reasonableness of such a covenant rests on the party challenging its enforcement").

- Schon testified that she observed part of a livestream Bravence class on December 21, 2021 that was "the exact same teaching sequence, the exact same class format" as Bar Method classes.  Tr. at 55:8–20.

- Carrie Konosky, a franchise business consultant and experienced instructor for The Bar Method, testified that on December 28, 2021, she took an entire 45-minute livestream Bravence class, taught by a former Bar Method teacher, that was "almost identical" to a Bar Method class and that she believed fit the Settlement Agreement's definition of "barre class."  *Id.* at 96:8–97:2, 115:7–117:20.

- The Amended Complaint includes "[t]rue and correct copies of screenshots obtained from Bravence's [web]site on December 7, 2021, . . . referencing Bravence's '**barre**' classes."  ECF No. 21 ¶ 74 (emphasis added).

- Email exchanges dated December 19, 2021 among Bravence instructors (some of whom included former Bar Method instructors) discussed "what elements of a '**barre**' style workout we are keeping in our technique."  Pl. Ex. 71 (restricted) (emphasis added); Tr. at 204:21–206:12.

- Email exchanges dated December 16, 2021 between Bravence employees and prospective clients described Bravence's "Signature 60" class as "our 60-minute functional **barre** format," Pl. Ex. 70 (emphasis added), and Bravence's class schedule from the week of December 6 lists eleven time slots in which the "Signature 60" class was offered, Pl. Ex. 18.  *See* Tr. at 203:4–204:15.

Furthermore, the barre offerings were at all times within a five-mile radius of the Steele Street Site.  Bravence started its operations at the exact same Steele Street Site the day after the Franchise Agreement expired and later continued its operations at a site in Glendale, Colorado less than two miles away.  *Id.* at 210:3–212:9.  Defendants offer a Bravence training manual regarding "functional movement."  Def. Ex. 200.  This was not a form of exercise or instruction.  Konosky, who has at least seven years of experience in exercise and marketing industries and who has taught more than 2,000 Bar Method classes, testified that she has never heard of the term.  Tr. at 94:14–23, 95:16–96:6, 96:18–97:2, 111:19–112:2.  Defendants also offered the testimony of Dr. Edward Foresman, a physical therapist, regarding Defendant Henderson's development of her

functional movement approach. *Id.* at 88:8–16, 89:7–25, 91:4–14, 92:23–7. However, Dr. Foresman had never attended a class offered by Bravence and could not testify whether it was different or the same as the Bar Method classes. *Id.* at 92:1–13, 93:12–17. Based upon the record before it, the Court finds it likely that Defendants breached their non-compete obligations under the Settlement Agreement.

Given the likelihood that The Bar Method will succeed in its claim for breach of the Settlement Agreement, a likely remedy for this breach is rescission of the Settlement Agreement. Under Colorado law, "[r]escission of a contract may be granted if the facts show a substantial breach, that the injury caused by the breach is irreparable, and that damages are inadequate, difficult or impossible to assess." *EarthInfo, Inc. v. Hydrosphere Res. Consultants, Inc.*, 900 P.2d 113, 118 (Colo. 1995); *see also Joyce v. Davis*, 539 F.2d 1262, 1266 (10th Cir. 1976) (noting the same requirements for rescission under Colorado law). "Rescission is a proper remedy where . . . there is such a substantial breach of the contract that the conduct of the parties is inconsistent with its continued existence." *Tromp v. Martinez*, 719 P.2d 380, 381 (Colo. App. 1986). "A party seeking to rescind a contract must return the opposite party to the *status quo ante*, or the position in which he or she was prior to entering into the contract." *EarthInfo, Inc.*, 900 P.2d at 118. "Since rescission is an equitable remedy, it is within the trial court's sound discretion to determine the method for accomplishing a return to the *status quo ante* based upon the facts." *Id.* at 119.

The Settlement Agreement's noncompete obligations constituted material terms of the contract, and Defendants' failure to comply with those obligations was likely a

substantial breach.  By agreeing to the noncompete obligations in the Settlement Agreement, The Bar Method agreed to enforce a narrower noncompete obligation than was in place under the Franchise Agreement, allowing Defendants to conduct any type of health, wellness, or exercise business, even within a five (5) mile radius of the Steele Street Site, as long as it did not "offer[] barre classes."  Pl. Ex. 14 § 3.  Schon testified that these provisions were material and important to The Bar Method to maintain the integrity of its franchise system.  Tr. at 57:12–58:14.  Yet, Defendants still did not abide by that narrower noncompete obligation.  As discussed above, *supra* Section IV.A., "the injury caused by the breach is [likely] irreparable," and "damages are inadequate, difficult or impossible to assess."  *See EarthInfo, Inc.*, 900 P.2d at 118.  Hence, the breach of these obligations in the Settlement Agreement was "such a substantial breach of the contract that the conduct of the parties is inconsistent with its continued existence."  *See Tromp*, 719 P.2d at 381.

### b.    Fraudulent Inducement of the Settlement Agreement

The Bar Method argues that the Settlement Agreement should be rescinded because it was fraudulently induced.  *See* ECF No. 2 at 26–30.  The Bar Method may show fraudulent inducement in a few ways.  Pertinently here, first, The Bar Method may establish that Defendants fraudulently concealed material information when entering into the Settlement Agreement.

> To establish a claim for fraudulent concealment, . . . a plaintiff must prove (1) the concealment of a material existing fact that in equity and good conscience the defendant should have disclosed; (2) knowledge on the defendant's part that such a fact was being concealed; (3) ignorance of that fact on the plaintiff's part; (4) the intention that the concealment was being acted upon; and (5) action on the concealment resulting in damages.

*Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 420 P.3d 223, 234 (2018). Second, a party's "intention not to honor [a] settlement agreement constitute[s] fraud." *Trimble v. City & Cnty. of Denver*, 697 P.2d 716, 723 (Colo. 1985), *superseded by statute on other grounds as stated in Colo. Dep't Transp. v. Brown Grp. Retail, Inc.*, 182 P.3d 687, 690 (Colo. 2008); *see also Jenner v. Bloor*, No. 03-cv-01344-MSK-CBS, 2008 WL 4297021, at *2 (D. Colo. Sept. 11, 2008) ("Where a party promises to perform an act in the future, fraud arises only where the party making that promise lacks a present intention to perform the future act.").  The Bar Method is likely to succeed on the merits of a fraudulent inducement claim on either basis.

### i.    Fraudulent Concealment

The Bar Method argues that Defendants fraudulently concealed the material fact that Defendant Henderson planned to operate her new Bravence studio during the first month of its opening in the exact same Steele Street Site where the former franchised Bar Method studio was housed.  ECF No. 23 at 6–8.  The Bar Method is likely to succeed on the merits of a fraudulent inducement claim on this ground.

- Defendant Henderson swore in her November 10, 2021 affidavit filed in the Minnesota Litigation that "Bravence is at a separate location from my former franchised business" and that "[t]he location is in Glendale, CO versus Denver, CO where The Bar Method was located" because the business lease for the former franchised Bar Method studio expired on November 30, 2021.  Pl. Ex. 25 ¶¶ 4, 7.

- On or about November 25, 2021, Defendant Henderson learned that she would be able to extend her lease at the Steele Street Site for one month, but she never disclosed this information to The Bar Method.  Tr. at 212:24–214:5; Pl. Ex. 1 § 16.D.

- Defendant Henderson concealed this information, knowing that settlement negotiations were ongoing in the Minnesota Litigation and that the Franchise Agreement noncompete terms to which she would be bound, absent the Settlement Agreement, would have prevented her from being able to operate any fitness studio, at or within five miles of the Steele Street Site. *See* Tr. at 213:3–214:5; Pl. Ex. 1 § 16.D.

Hence, The Bar Method did not learn of Defendant Henderson's plan to remain at the Steele Street Site until after the Settlement Agreement was signed, but this would have been material information to The Bar Method in agreeing to the Settlement Agreement. *See* ECF No. 23 at 1; Tr. at 85:7–23 (Schon testimony regarding the importance of not having a competing studio opening in the same location as the former franchised studio); *see also, e.g.*, *Fitness Together*, 2020 WL 6119470, at *11 (noting that a franchisee operating in the same location as the former franchise causes the franchisor to "lose[] goodwill, customers, and market presence in a way not easily calculable by damages"). The Bar Method has established a substantial likelihood of succeeding on a fraudulent concealment claim.

### ii.      Fraudulent Intent

The Bar Method also argues that "Defendants had zero intent of honoring the terms of the Settlement Agreement." ECF No. 2 at 27; *see Trimble*, 697 P.2d at 723 (a party's "intention not to honor [a] settlement agreement constitute[s] fraud").

- Defendant Henderson testified that on December 1, 2021, the effective date of the Settlement Agreement, Bravence was offering its "barre format" Signature 60 class, taught by former Bar Method instructors, who Defendant Henderson began recruiting starting in September of 2021 and training in November of 2021. Pl. Ex. 14 at 1; Pl. Ex. 70; Tr. at 110:2–24, 201:11–14; at 203:18–204:7; 214:6–23.

- The Signature 60 class continued to be taught throughout the week of December 6, 2021. Pl. Ex. 18.

- At all times, Defendant Henderson knew that these classes would be offered within five miles of the Steele Street Site—whether at the Steele Street Site, itself, or at a site in Glendale less than two miles away.  Tr. at 210:3–211:18, 212:24–213:2, 213:24–214:5.

The Bar Method has established that Defendant Henderson likely did not intend to abide by the Settlement Agreement's obligations not to engage in a business offering barre classes within five miles of the Steele Street Site and has a substantial likelihood of succeeding on the merits of a fraudulent inducement claim.

### 3.    Breach of the Franchise Agreement

Given that The Bar Method has a substantial likelihood of success in gaining rescission of the Settlement Agreement, the Franchise Agreement's terms likely control. The Court further finds that The Bar Method has a substantial likelihood of success on the merits of its claim for breach of the Franchise Agreement's post-term covenant not to compete and covenants of confidentiality.  *See* Pl. Ex. 1 §§ 3, 4.

### a.    The Franchise Agreement's Post-Term Covenant Not To Compete

As noted, the Henderson Defendants promised not to own or perform services at a Competitive Business (which includes "facilities or businesses offering barre-based or other fitness-based instruction"), within a five-mile radius of the Steele Street Site for a period of two years following the termination of the Franchise Agreement.  Pl. Ex. 1 §§ 12, 16.D.   For the same reasons that the noncompete obligations in the Settlement Agreement are likely valid, the post-term covenant not to compete in the Franchise agreement is likely valid under Colorado law.  *See supra* Section IV.B.2.a.; Colo. Rev. Stat. § 8-2-113(2)(d); *Harrison v. Albright*, 577 P.2d 302, 305 (Colo. App. 1977) (noting

that Colorado courts have upheld covenants not to compete for terms up to five years and spanning distances of 100 miles).

It is not disputed that Bravence operated for its first month out of the Steele Street Site and thereafter has operated at a site in Glendale, Colorado less than two miles away. Tr. at 210:3–12; *see also id*. at 17:21–25.  In addition, as discussed above, Bravence has provided "barre" format classes.  *See supra* Section IV.B.2.a.  Bravence has been offering other types of fitness classes, as well.  *See* Def. Ex. 200 (restricted) at DEF0010734 (Bravence Studios Functional Movement Training Manual describing Bravence's "class types," including a "total body, low impact, form focused, and a highly efficient workout"; "strength classes"; and a "cardio workout"); Pl. Ex. 18 (offering the classes described in the manual on Bravence's schedule the week of December 6, 2021).  The Bar Method has thus demonstrated a substantial likelihood that Defendants breached the Franchise Agreement's provision proscribing ownership or services at a business "offering barre-based or other fitness-based instruction" within five miles of the Steele Street Site.

### b. The Franchise Agreement's Post-Term Covenants of Confidentiality

The Bar Method is also likely to succeed on the merits of a claim for breach of the Franchise Agreement's covenants of confidentiality.   The Henderson Defendants promised to, upon expiration of the agreement, "immediately cease using any Confidential Information, whether directly or indirectly through one or more intermediaries, in any business or otherwise."  Pl. Ex. 1 § 16.C.  Confidential Information is defined in Section 11.A. of the Franchise Agreement to include "marketing techniques, knowledge and experience used in developing and operating Bar Method Studios, including methods,

techniques and processes for teaching Classes." *Id.* § 11.A.  As discussed above, *see supra* Section IV.B.2.a., Bravence offers barres classes that closely resemble The Bar Method's classes.  Tr. at 55:8–20; *see also* Pl. Ex. 71 (restricted) (discussing "what elements of a 'barre' style workout we are keeping in our technique").

### 4.    Misappropriation of Trade Secrets

Under the CUTSA and the federal DTSA, trade secret misappropriation occurs when a person discloses or uses another's trade secrets obtained by improper means, including through a breach of a duty to maintain their secrecy.  18 U.S.C. § 1839 (5)-(6); Colo. Rev. Stat. § 7-74-102(1)-(2); *see also Min. Deposits Ltd. v. Zigan*, 773 P.2d 606, 608 (Colo. App. 1988).  Courts have found that a fitness franchisor's exercise training methods, sales training, client customer retention strategies, and confidential operations manual are considered trade secrets.  *See, e.g.*, *Core Progression*, 2021 WL 1222768, at *9; *see also Fitness Together*, 2020 WL 6119470, at *10 ("Fitness Together has established that Defendant likely misappropriated some trade secrets—either through wrongful acquisition or disclosure—including client lists, proprietary client information, and a proprietary nutrition guide, all in violation of state and federal law.").

Defendants argue that The Bar Method's training methods, instructor certification, and exercise sequencing and choreography are not trade secrets because anyone could walk into a Bar Method class or stream it online and observe the class sequence, without signing any non-disclosure agreement.  These arguments are unconvincing.  Schon testified that The Bar Method's classes and methods are the result of significant efforts in which the classes have been vetted for safety and effectiveness, and that teacher training

is extensive. *See* Tr. at 66:20–67:5. The Bar Method takes efforts to maintain the confidentiality of these efforts and technical training through confidentiality obligations such as the ones in the Henderson Defendants' Franchise Agreement and in nondisclosure agreements for teacher trainees. *See* Pl. Ex. 1 §§ 11, 16; Pl. Exs. 39–41.

Even if The Bar Method's proprietary methods of fitness instruction did not qualify as trade secrets under Colorado and federal law, it is well established under federal and Colorado law that confidential and proprietary client list and data can constitute trade secrets. *MSC Safety Sols., LLC v. Trivent Safety Consulting, LLC*, No. 19-cv-00938-MEH, 2019 WL 5189004, at *7–9 (D. Colo. Oct. 15, 2019); *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1114 (10th Cir. 2009). Defendant Henderson used client information by keeping a sign-up sheet of client contact information in the former franchised Bar Method studio; emailing The Bar Method clients about the closure of the studio; and responding to client emails with information about Bravence. Pl. Ex. 73; *See* Tr. at 140:2–11, 149:7–150:2, 191:12–15; Pl. Ex. 74; Pl. Ex. 63 (restricted); Def. Ex. 201. The Bar Method is likely to succeed on the merits of its trade secret claims under Colorado and federal law.

### C.    Balance of the Harms

"To succeed on a typical preliminary-injunction motion, the moving party needs to prove . . . that her 'threatened injury' (without the injunction) outweighs the opposing party's under the injunction." *Mrs. Fields*, 941 F.3d at 1232. Here, "[a]lthough an injunction may impose serious harms on Defendants—including the temporary closure of [Bravence]—that injury 'may be discounted by the fact that the defendant[s] brought that

injury upon [them]sel[ves]."[8]  *Core Progression*, 2021 WL 1222768, at *10 (quoting *Fitness Together*, 2020 WL 6119470, at *11)).  "Even if [Bravence] is [Henderson's] only source of income, judges in the District of Colorado have considered this argument and rejected it where a plaintiff is potentially faced with . . . significant damage to its business." *Id.* (citing *Doubleclick Inc. v. Paikin*, 402 F. Supp. 2d 1251, 1260 (D. Colo. 2005)).  The Bar Method has made a strong showing that its injury absent an injunction outweighs the injury the injunction may cause Defendants.

### D.    Public Interest

The final requirement for a movant to obtain a preliminary injunction is to show that "the injunction isn't adverse to the public interest."  *Mrs. Fields*, 941 F.3d at 1232.  "[O]ther judges in this District have concluded that the fact that Colorado statutes permit such noncompete agreements demonstrates that enforcing one would not be against the public interest."  *Core Progression*, 2021 WL 1222768, at *10; *see also Fitness Together*, 2020 WL 6119470, at *12 ("[P]reventing this sort of unfair competition helps protect and encourage investment in the very businesses that give rise to these opportunities.").  Furthermore, "it is in the public interest for laws to be obeyed and contracts to be observed."  *Panorama Consulting Sols., LLC v. Armitage*, No. 17-cv-01400-RM, 2017 WL 11547493, at *4 (D. Colo. June 9, 2017).  The Court finds that granting preliminary injunctive relief here would not be against the public interest.

---

[8] Moreover, nothing prevents Defendant Henderson from working in the fitness industry anywhere outside of the territory defined in the Franchise Agreement for the next two years.  Indeed, The Bar Method notes in its Proposed Interim Order Granting Plaintiff's Motion for a Preliminary Injunction that Defendant Henderson could even "offer wellness services outside the scope of a Competitive Business, including acupuncture, cupping, massages, nutrition counseling, medi-spa services and life coach services."  ECF No. 37-1 at 13.

## V.     SECURITY

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."   Fed. R. Civ. P. 65(c); *see Core Progression*, 2021 WL 1222768, at *11 (collecting cases) ("[A] bond is routinely imposed in similar cases.").

Defendants propose that a bond of $1,800,000—consisting of $1,000,000 in lost revenue, $300,000 in costs to restart the business and redevelop its goodwill and customers, and $500,000 in recoverable attorneys' fees—would be necessary to pay Defendants' costs and damages if they are found to have been wrongfully enjoined.  ECF No. 29 at 28.   However, Defendants have submitted no testimony, evidence, or documents to support these figures.   The Bar Method proposes a bond amount of $100,000.  ECF No. 40-1 at 28.  Similar cases have imposed a bond of $156,000, *Core Progression*, 2021 WL 1222768, at *11; $50,000, *Fitness Together*, 2020 WL 6119470, at *12; and $5,000, *Panorama*, 2017 WL 11547493, at *5.

The Court ORDERS the parties to meet and confer regarding the amount of security required, and if the parties are unable to agree on the amount of security, each party shall submit a supplemental statement recommending the amount and terms of the bond, supported by a detailed and documented basis for the recommendation, by Tuesday, January 25, 2022.  *See, e.g.*, *Doubleclick*, 402 F. Supp. 2d at 1261 (requiring the parties to submit statement recommending amount and terms of security).

## VI.    CONCLUSION

For the reasons stated above, the Court GRANTS IN PART Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction, ECF No. 2, to the extent it requests a preliminary injunction, and otherwise DENIES the motion as moot, to the extent it requests a temporary restraining order.   The Court FURTHER ORDERS that Defendants, as well as their officers, agents, servants, employees, attorneys, and any other persons who are in active concert or participation with Defendants, (collectively, the "Enjoined Parties") are immediately and preliminarily ordered and enjoined as follows:

1.    The Enjoined Parties are enjoined, from Tuesday, January 18, 2022 until November 30, 2023, from having any direct or indirect, controlling or non-controlling ownership interest in any Competitive Business which is located or providing services to clients at any location: (a) at the site of Defendants' former Cherry Creek Studio located at 311 Steele Street, Denver, Colorado; (b) within a five (5)-mile radius of 311 Steele Street, Denver, Colorado; or (3) within a five (5)-mile radius of any Bar Method® studio operating or under construction as of November 30, 2021.

2.    The Enjoined Parties are enjoined, from Tuesday, January 18, 2022 until November 30, 2023, from performing services as a director, officer, manager, teacher, employee, consultant, representative, or agent for a Competitive Business which is located or providing services to clients at any location: (a) at 311 Steele Street, Denver, Colorado; (b) within a five (5)-mile radius of 311 Steele Street, Denver, Colorado; or (c) within a five (5)-mile radius of any Bar Method® studio operating or under construction as of November 30, 2021.

3.    The term "Competitive Business" means any gymnasium, an athletic or fitness center, a health club, an exercise or aerobics studio, or one or more similar facilities or businesses offering barre-based or other fitness-based instruction, or any entity that grants franchises or licenses for any of these types of businesses.

4.    The Enjoined Parties are enjoined from using any "Confidential Information," as that term is defined in Section 11.A of the Franchise Agreement and including all "Client Information," meaning the names, contact information, financial information, activity-related information, and other personal information of or relating to the clients and prospective clients of the Cherry Creek Studio.

The Court FURTHER ORDERS the parties to meet and confer regarding the amount of security required, and if the parties are unable to agree on the amount of security, each party shall submit a supplemental statement recommending the amount and terms of the bond, supported by a detailed and documented basis for the recommendation, by Tuesday, January 25, 2022.[9]

DATED:  January 16, 2022

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge

---

[9] The Bar Method argues that it should be awarded its attorneys' fees and costs, *see* ECF No. 2 at 45–46, and Defendant argues that "due to the attorneys [sic] fee clause in the Settlement Agreement [The Bar Method] would owe attorneys [sic] fees to Defendants," ECF No. 29 at 28.  Under Local Rule 54.3 of the Local Rules of Practice for the United States District Court for the District of Colorado, "a motion for attorney fees shall be supported by affidavit" and "shall include the following for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed." D.C.COLO.LCivR 54.3(a)–(b).  No party's request for attorneys' fees in their motion briefing meets these requirements; therefore, if any party would like to move for attorneys' fees, the party shall do so in compliance with Local Rule 54.3.